**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle L Ardoin, | No. CV-22-01358-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Michelle L. Ardoin ("Plaintiff") seeks judicial review of a decision by the Social Security Administration ("SSA") Commissioner (the "Commissioner") denying her application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits under the Social Security Act, 42 U.S.C. § 301 *et seq*. (the "Act"). (Doc. 1). Plaintiff filed her Opening Brief (Doc. 12), the Commissioner filed a Response (Doc. 15), and Plaintiff filed a Reply (Doc 16). Upon review of the briefs and the Administrative Record (Doc. 11, "AR"), the Court reverses in part the Administrative Law Judge's June 2, 2021, decision (AR at 8–33) and remands for further proceedings.

**I.     Background**

Plaintiff filed an application for SSDI benefits under Title II of the Act on May 31, 2017, and an application for SSI benefits under Title XVI of the Act on July 19, 2017. (*Id*. at 15). Both applications alleged an onset of disability date of April 22, 2017. (*Id*.) Plaintiff was forty-three years old at the time of her alleged onset date and has a high

1    school education.   (*Id*. at 23).   Her past relevant work included employment as an

2    accounting clerk/account analyst, finance aide counselor, and administrative assistant/

3    receptionist.  (*Id*. at 31).  She has a history of cervical spine surgeries, neck surgeries, and

4    lumbar back fusion surgery.  (Doc. 12 at 2–3).  Plaintiff claims she is unable to work

5    because she suffers from severe pain in her neck, back, and upper and lower extremities

6    that causes difficulty sitting, standing, and walking; experiences chronic migraines; and

7    has to use assistive devices to help with ambulation.  (*Id*. at 12 n.2).

8         Plaintiff's claims were initially denied on August 2, 2017, and upon reconsideration

9    on January 26, 2018.  (AR at 14).  After holding various hearings from 2019–2021, the

10    Administrative Law Judge ("ALJ") again issued an unfavorable decision on June 2, 2021

11    (*id*. at 8–33) (the "June Decision").

12    **II.    The ALJ's Five Step Process**

13         To be eligible for Social Security benefits, a claimant must show an "inability to

14    engage in any substantial gainful activity by reason of any medically determinable physical

15    or mental impairment which can be expected to result in death or which has lasted or can

16    be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

17    423(d)(1)(A); see also *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).   The ALJ

18    follows a five-step process[1] to determine whether a claimant is disabled under the Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii).  If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii).  If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.*  If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[2] A claimant's residual functional capacity is defined as their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See*

do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ's findings in the June Decision are as follows:

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2018, and that she had not engaged in substantial gainful activity since April 22, 2017. (AR. at 18). At step two, she found that Plaintiff has the following severe impairments: lumbar and cervical spondylosis; post laminectomy syndrome of the cervical spine; bursitis of the bilateral hips; coccygodynia; peripheral neuropathy; left foot drop; asthma; obesity; depression; anxiety disorder; and unspecified personality disorder with histrionic, avoidant, and dependent traits. (*Id*. at 18–20 citing 20 C.F.R. 404.1520(c), 416.920(c)). At step three, she determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id*. at 20–23).

At step four, the ALJ found Plaintiff has the RFC to perform sedentary work[3] with several exceptions:

> [Plaintiff] requires the use of a cane to ambulate to and from the work station. She can occasionally use foot controls and occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel and crouch, but can never crawl. [Plaintiff] can occasionally reach overhead bilaterally and frequently reach bilaterally in all other directions. She must avoid vibration, chemicals, odors, dusts, fumes, gases, and hazards, including moving machinery and unprotected heights. She is able to perform simple, routine tasks and make simple, work related decisions. She can have occasional interaction with

20 C.F.R. §§ 404.1520(e), 416.920(e).

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a); 416.967(a)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

coworkers and the public.

(*Id*. at 24).  She found the objective medical testing suggested that Plaintiff's nerve and muscle functioning was greater than alleged (*id*. at 25), and the record did not support finding a wheelchair or walker as medically necessary.  (*Id*. at 27).  The ALJ concluded Plaintiff was unable to perform past relevant work given her RFC assessment.  (*Id*. at 31).  At step five, however, the ALJ found that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*. at 32–33).  Plaintiff was therefore deemed not disabled under the Act.  (*Id*. at 33).

The SSA Appeals Council denied Plaintiff's request for review of the ALJ's June Decision, thus adopting the decision as the agency's final decision.  (*Id.* at 1–3).  This appeal followed.   On August 12, 2022, Plaintiff filed a Complaint under 42 U.S.C. §§ 405(g),  1383(c)(3) requesting judicial review and reversal of the Commissioner's decision. (Doc. 1).

**III.    Standard of Review**

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  *Garrison*, 759 F.3d at 1009 (9th Cir. 2014) (internal citation omitted).  To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*,

1    881 F.2d 747, 750 (9th Cir. 1989).   The ALJ must "set forth the reasoning behind its

2    decisions in a way that allows for meaningful review."  *Brown-Hunter v. Colvin*, 806 F.3d

3    487, 492 (9th Cir. 2015).  This is because district courts may only review those reasons the

4    ALJ places on the record and cannot speculate what the ALJ's reasoning might have been

5    based on other evidence available.  *Bray v. Commissioner of Social Security Admin.*, 554

6    F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require

7    [the court] to review the ALJ's decision based on the reasoning and factual findings offered

8    by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may

9    have been thinking.").  Generally, "[w]here the evidence is susceptible to more than one

10   rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

11   must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations

12   omitted).

13        "Harmless error principles apply in the Social Security Act context."  *Molina v.*

14   *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains

15   substantial evidence supporting the ALJ's decision, and the error does not affect the

16   ultimate nondisability determination.  *Id*.  Typically, the claimant bears the burden of

17   showing that an error is harmful.  *Id*.  at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396,

18   409 (2009)).

19   **IV.    Discussion**

20        Plaintiff contends the ALJ erred at step four when calculating Plaintiff's sedentary

21   RFC for two reasons.  First, Plaintiff argues the ALJ improperly rejected certain medical

22   opinions.  Second, Plaintiff argues the ALJ improperly discounted Plaintiff's symptom

23   testimony.  The Court will address each of Plaintiff's arguments in turn.

24        **A.    Medical Opinions**

25        In determining Plaintiff's RFC, the ALJ evaluated the medical opinions by state

26   agency medical consultants; treating physical therapist Layne Cooper ("PT Cooper"),

27   medical provider Brian McIntosh, PA-C; medical experts Steven Goldstein, M.D. ("Dr.

28   Goldstein") and Natalie Litvinsky, M.D. ("Dr. Litvinsky"); and consultative examiner

Robert Gordon, D.O. ("Dr. Gordon").  (AR at 29–30).  Plaintiff challenges the ALJ's decision to assign little or no weight to opinions by PT Cooper, Dr. Goldstein, and Dr. Gordon.  (Doc. 12 at 14–20).  Plaintiff maintains the ALJ did not adequately explain how she considered the supportability and consistency factors for evaluating medical opinions under *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  (Doc. 12 at 14).  The Commissioner responds the ALJ reasonably determined Plaintiff's RFC by reviewing the entire medical record.  (Doc. 15 at 15).

### 1.      Legal Standard

Because Plaintiff applied for disability benefits after March 27, 2017, she is subject to the new set of regulations for evaluating evidence from medical providers.  *See* 20 C.F.R. § 416.920c.  The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[4]  The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

The Ninth Circuit confirmed that the recent changes to the SSA regulations displaced the former hierarchy of medical opinions.  *Woods*, 32 F.4th at 787.  The

---

[4] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

1    longstanding rule that assigned "presumptive weight based on the extent of the doctor's

2    relationship with the claimant [] no longer applies." *Id*.  An ALJ no longer needs to

3    articulate "specific and legitimate reasons" for rejecting a treating or examining doctor's

4    opinion. *Id*. at 792.  "Now, an ALJ's decision . . . to discredit *any* medical opinion, must

5    simply be supported by substantial evidence." *Id*. at 787 (emphasis added).

6            However, "[e]ven under the new regulations, an ALJ cannot reject an examining or

7    treating doctor's opinion as unsupported or inconsistent without providing an explanation

8    supported by substantial evidence." *Id*. at 792.  Instead, "[t]he agency must articulate how

9    persuasive it finds all the medical opinions from each doctor or other source and explain

10   how it considered the supportability and consistency factors in reaching these

11   findings." *Id.*  Supportability refers to "the extent to which a medical source supports the

12   medical opinion by explaining the 'relevant . . . objective medical evidence." *Id*. at 791–

13   92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  Consistency refers to "the extent to which a

14   medical opinion is 'consistent . . . with the evidence from other medical sources and

15   nonmedical sources in the claim." *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

16           At issue is whether the ALJ provided explanations supported by substantial

17   evidence when rejecting medical opinions by PT Cooper, Dr. Goldstein, and Dr. Gordon.

18   The Court concludes she did as to PT Cooper and Dr. Goldstein but did not as to

19   Dr. Gordon.

20                   **2.      PT Cooper: Treating Physical Therapist**

21           Plaintiff first raises the August 2017 assessment by PT Cooper (AR at Ex. B17F).

22   PT Cooper assessed Plaintiff "had a severely reduced sedentary exertional ability, required

23   unscheduled breaks, required use of an assistive device, had additional postural and

24   manipulative limits, and would be absent more than four days per month." (AR at 29 citing

25   Exhibit B17F).  Plaintiff argues the ALJ committed harmful error when disregarding PT

26   Cooper's assessment because he opined limitations that were "facially work-preclusive"

27   and showed Plaintiff "could not perform even sedentary work due to cervicalgia, lumbago,

28   gait abnormalities, general weakness, and radiculopathy." (Doc. 12 at 17, 10).

Although the ALJ found PT Cooper's assessment was adequately supported by explanations, she did not find it persuasive due to credibility and consistency issues. (AR at 29–30).   The ALJ noted the form's persuasiveness was "greatly diminished" because it was unclear who filled out the form due to two signatures at the end and discrepancies in handwriting, and the form "indicate[d] that the provider began treating the [Plaintiff] at the end of October 2017, but is dated August 2017." (*Id*. at 30).  Indeed, it is the ALJ's responsibility to determine credibility.  *Andrews*, 53 F.3d at 1039.  The ALJ sufficiently articulated her reasons for rejecting the assessment on this basis.

The ALJ further found PT Cooper's opinion was inconsistent with other evidence in the record that showed Plaintiff "reported being able to perform a wide range of activities of daily living, reported improvement after physical therapy in 2019, and which reflected mild to at most moderate findings on objective imaging." (*Id*.)  In doing so, the ALJ cited to Exhibits B31F, B34F, and B43F.  Plaintiff argues this explanation is insufficient because the ALJ did not "identify any specific piece of medical evidence in the record that contradicted PT Cooper's opinion" and rather cited to exhibits generally.  (Doc. 12 at 16). But this is a plain misrepresentation of the June Decision. The ALJ indeed identified numerous instances between July 2017 and October 2019—all supported by relevant page citations—where Plaintiff made statements to other treatment providers about her daily living that were inconsistent with the limitations that PT Cooper opined in August 2017. (AR at 28).[5]  And it is obvious that Plaintiff's supporting authority, *Townsend v. Comm'r*

_____

[5] The ALJ stated the following discrepancies:

> [Plaintiff] reported she [] had new puppies that she was caring for; was able to drive to California; was "walking a lot" to do Christmas shopping; was sitting on the ground with her grandson; was cooking and baking for the holiday; had to wait for several hours at a vet clinic; was walking "4000 to 6000 steps daily"; was using her walker to walk up to a mile and going on walks with friends and her niece; was caring for seven dogs; was increasing her walking distances and able to walk 1.8 to 2 miles; and was doing extensive wedding planning for her niece (Exs. B16F/1; B31F/40, 43, 34, 50, 119, 154; B41F/40; B43F/171, 181, 190, 161, 151, 123). These activities are inconsistent with the claimant's allegations of severe difficulty walking, lower extremity pain and numbness, her use of an assistive device, and her reports of being unable to drive since 2013 due to pain symptoms.

(AR at 28).

*of Soc. Sec. Admin.*, 2022 WL 3443678, at \*8–9 (D. Ariz. Aug. 17, 2022), is distinguishable from the present matter because the ALJ there "simply offered a non-specific reference to the entirety of the record, which spans over 2,100 pages." *Id.* The opposite is true here.

Overall, substantial evidence supports the ALJ's rejection of PT Cooper's 2017 assessment due to credibility concerns and inconsistencies with Plaintiff's own representations made to other treating providers during a similar time frame. The Court will affirm the ALJ's decision in this respect.

### 3.    Dr. Goldstein: Agency Non-examining Physician

Plaintiff next raises the February 2020 assessment by Dr. Goldstein (AR at Ex. B37F). The ALJ requested Dr. Goldstein's expert opinion on Plaintiff's disability claim. (*Id.* at 2068). Dr. Goldstein's assessment was in the form of check-box interrogatories, and he did not provide any further explanations apart from listing diagnoses. (*See id.* at Ex. B37F). He opined Plaintiff's impairments met social security Listing 11.08 for spinal cord disorders, which is relevant to step three of the Act's disability framework. (*Id.* at 2077); 20 C.F.R. § 404.1520(a)(4)(iii). Plaintiff argues the ALJ committed harmful error when disregarding Dr. Goldstein's assessment because a finding that Plaintiff met a social security Listing directs a finding of disability. (Doc. 12 at 18).

The ALJ found Dr. Goldstein's opinion unpersuasive because the imaging and EMG results in the record did not reflect evidence of spinal cord disorder. (*Id.* at 30). She concluded Dr. Goldstein's assessment was "not consistent with the totality of record, including the observations of medical expert Dr. Litvinsky[6]," and contrary to the ALJ's finding at step three that Plaintiff did not meet any listing. (*Id.* citing AR at Exs. B34F, B43F, B13F, B19F, B16F, B20F, B4F, B47F, B40F). Specifically, the ALJ found the following with respect to step three:

/ / /

---

[6] The ALJ had also requested Dr. Litvinsky's expert opinion on Plaintiff's SSA disability claim. (AR At 2081). Dr. Litvinsky submitted her May 2020 assessment opining Plaintiff did not meet any social security Listing. (*Id.* at 2093–2101 (Ex. B40F)). The Court notes that although Dr. Litvinsky's assessment was in the form of check-box interrogatories, Dr. Litvinsky provided additional explanations while citing to Plaintiff's medical records. (*Id.* at 2093–95).

1
2
3
4
5
6

> [W]hile [Plaintiff] has presented with bilateral foot drop and other symptoms, and reported needing a wheelchair, the objective evidence does not support finding a spinal cord disorder at listing level.  There is no evidence of spinal canal compromise at any level (Exhibits B13F/11; B16F/2; B19F/4; B34F/14-16, 23, 25; B47F). . . . Given the questions regarding the source of the claimant's symptoms and in the absence of any objective evidence showing a spinal cord disorder, the undersigned finds the claimant does not meet or equal listing 11.08.

7
8

(*Id*. at 22).  The ALJ also took issue with the fact that Dr. Goldstein cited to only three out of 2000 pages of evidence to support his diagnoses.  (*Id*. at 30)

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff passively suggests the ALJ "usurped the role of doctors when interpreting medical evidence" and "improperly relied on her own assessment."  (Doc. 12 at 18 quoting *Leusch v. Berryhill*, 358 F. Supp. 3d 896, 906 (D. Ariz. 2019); *Omerasevic v. Commr. of Soc. Sec. Admin.*, No. CV-17-08211-PCT-DMF, Order, Doc. 29 at 22 (D. Ariz. Jan. 2, 2019)).  However, the Court concludes there is substantial evidence to support the ALJ's decision to disregard Dr. Goldstein's assessment under the consistency and supportability factors.  The ALJ provided multiple examples where Goldstein's medical opinion was not "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim" that demonstrate Plaintiff does not meet any social security Listing.  20 C.F.R. § 404.1520c(c)(2)).  Moreover, the ALJ reasonably found the assessment unpersuasive because it contained little in terms of "objective medical evidence and supporting explanations."  20 C.F.R. § 404.1520c(c)(1)); *see also Ford v. Saul*, 950 F.3d 1141 (9th Cir. 2020) ("[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions[.]").  This was well within the scope of the ALJ's authority.  *See Andrews*, 53 F.3d at 1039.

24

Therefore, the Court will affirm the ALJ's decision in this respect.

25

### 4.      Dr. Gordon: Agency Examining Physician

26
27
28

Plaintiff last raises the February 2021 assessment by Dr. Gordon (AR at Ex. B49F).  Dr. Gordon conducted a thirty-minute exam on Plaintiff and assessed she could not do sedentary work and she "could frequently and occasionally lift and carry up to 10 pounds,

1    and could sit, stand, and walk for two hours each total in an eight-hour workday."

2    (Doc. 12 at 11 citing AR at 2773–74).  Dr. Gordon also concluded she "could use her hands

3    for reaching, handling, fingering, feeling, and pushing and pulling on an occasional basis,

4    which was defined as up to one-third of an eight-hour workday."  (*Id*. citing AR at 2775).

5          The ALJ found Dr. Gordon's assessment persuasive with respect to Plaintiff's

6    reduced grip strength and pain with most movements, but unpersuasive with respect to

7    Plaintiff's sitting, handle, finger, and feeling limits.  (AR at 30).  The ALJ concluded the

8    record as a whole did not reflect Dr. Gordon's finding that Plaintiff could only sit for two

9    hours.  She explained Dr. Gordon's sitting limitation was inconsistent with (1) his own

10   observations that Plaintiff "was able to sit in the chair for the duration of the exam without

11   any apparent discomfort[.]" and (2) opinions by state agency medical consultants Yosef

12   Schwartz, MD, and Michael Keer, DO (the "consultants") (AR at Exs. B4A, B5A, B8A,

13   B9A) (the "consultant assessments").  (AR at 30).  Plaintiff argues the ALJ committed

14   harmful error when disregarding Dr. Gordon's sitting limitation because it "would preclude

15   all sustained work activity."  (Doc. 12 at 20).  The Court will address each of the ALJ's

16   reasons in turn.  For the following reason, neither are supported by substantial evidence.

17                    **a.       Dr. Gordon's Observations do not Contradict the Sitting
                                 Limitations he Opined**
18

19         First, the ALJ explained that Dr. Gordon's two-hour sitting limitation was

20   inconsistent with his observations that Plaintiff was able to sit without any apparent

21   discomfort during the examination.  (AR at 30).  It is true that "internal inconsistencies" in

22   a physician's report may serve as a proper basis to exclude that medical opinion.  *Gabor v.*

23   *Barnhart*, 221 Fed.App'x 548, 550 (9th Cir. 2007); *Morgan v. Commissioner of the SSA*,

24   169 F.3d 595, 602-03 (9th Cir. 1999) (holding that an ALJ may properly reject a treating

25   physician's opinion that is internally inconsistent).  However, Dr. Gordon's examination of

26   Plaintiff spanned only thirty minutes.  The fact Plaintiff could sit for a thirty-minute period

27   does not lend as substantial evidence that she cannot for sit two hours.  *See Garrison*, 759

28   F.3d at 1009 (explaining substantial evidence is "such relevant evidence as a reasonable

1    person might accept as adequate to support a conclusion"). The ALJ's reason for

2    discounting Dr. Gordon's sitting limitation is insufficient on this basis.

3                    **b.    The ALJ's Comparisons of Dr. Gordon's Assessment with**
                             **the State Agency Medical Consultants is Contradictory**

4

5           Second, the ALJ rejected Dr. Gordon's assessment as unpersuasive because it was

6    inconsistent with "other evidence in the record." (AR at 30). The ALJ's reference to the

7    record is limited to four consultant assessments. (*Id*. at Exs. B4A, B5A, B8A, B9A). Two

8    consultant assessments were completed in August 2017 (*Id*. at 168, 183) and the other two

9    were completed in January 2018. (*Id*. at 212, 237). Although the ALJ did not provide

10   specific page citations, the Court assumes the ALJ intended to undermine Dr. Gordan's

11   two hour sitting limitation with the consultants' findings that Plaintiff could sit for "about

12   6 hours in an 8 hour workday." (*Id*. 163, 178, 205, 230). Indeed, Plaintiff's RFC for

13   sedentary work does not reflect Dr. Gordon's sitting limitation.

14          Plaintiff argues the ALJ erred in rejecting Dr. Gordon's sitting limitation because

15   the consultants were non-examining physicians and their 2017 and 2018 opinions are stale

16   when compared to Dr. Gordon's 2021 opinion. (Doc. 12 at 19–20).

17                    **i.    Non-examining physicians versus examining**
                             **physicians**

18

19          Plaintiff first argues the ALJ improperly relied on the consultant assessments

20   because they were proffered by non-examining physicians whereas Dr. Gordon served as

21   an examining physician. (Doc. 12 at 20). Plaintiff cites to *Buck v. Berryhill*, 869 F.3d

22   1040, 1050 (9th Cir. 2017) for the proposition that "the opinion of a nonexamining

23   physician may not itself serve as substantial evidence to support a finding a claimant is not

24   disabled[.]" (Doc. 12 at 20). The Commissioner argues that the ALJs must treat the

25   consultant opinions the same as medical opinion under the SSA regulations. (Doc. 15 at

26   22 citing Doc. 15 at 15–16 n.8).

27          The Court sides with the Commissioner under *Woods*, which clarified that this

28   circuit no longer recognizes special deference to opinions of treating and examining

physicians over nonexamining physicians. 32 F.4th at 791–792. Plaintiff's invocation of *Buck* is thus irreconcilable with *Woods*. Furthermore, the "opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Reese v. Kijakazi*, 2022 WL 16630587, at *5 (S.D. Cal. Sep. 7, 2022) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)) (applying the recent changes to the SSA regulations).

### ii. Subsequent Medical Evidence

Plaintiff next argues the consultant assessments do not demonstrate sufficient inconsistencies because they were completed over three years prior to Dr. Gordon's examination of Plaintiff and review of the record. (Doc. 12 at 19). As a general principle, the most recent medical reports are the most probative in cases where the claimant's condition is or may be progressively deteriorating.[7] *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("Where a claimant's condition becomes progressively worse, medical reports from an early phase of the disease are likely to be less probative than later reports."); *Barraza v. Colvin*, 2014 WL 651909, at *5 n.3 (E.D. Cal. Feb. 19, 2014) ("The Ninth Circuit has found that medical reports that are most recent are more highly probative than those which were rendered at some earlier time.") (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001)). This principle applies when the ALJ is attempting to determine whether a claimant is disabled. *Magallanes v. Bowen*, 881 F.2d 747, 754–755 (citing *Stone*, 761 F.2d at 532). Although there is "no outright prohibition on an ALJ relying on outdated medical opinions, the Ninth Circuit has at times looked with skepticism on an ALJ's reliance on stale medical opinions that do not reflect subsequent deterioration of a claimant's condition." *Brand v. Kijakazi*, 575 F. Supp. 3d 1265, 1269 (D. Nev. 2021) (citing *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (finding "earlier medical evaluations, based on [the plaintiff's] condition several months before, d[id] not constitute substantial evidence to rebut the conclusions

---

[7] The record contains at least some evidence that Plaintiff's condition has deteriorated. For instance, various records confirmed Plaintiff had degenerative disease at the L4-5 level. (*See e.g.*, AR at 2012).

- 13 -

1    contained in [a more recent] report")).

2    　　　The 2017 and 2018 consultant assessments reflected less severe symptoms, while

3    Dr Gordon's 2021 assessment reflected more severe symptoms. The Court is troubled by

4    how the ALJ uses the assessments to undermine each other. As challenged by Plaintiff, the

5    ALJ rejected Dr. Gordon's two-hour sitting limitation because it was inconsistent with the

6    state consultants' six hour sitting limitation.  The ALJ cited to no other evidence in the

7    record to explain why Dr. Gordon's sitting limitation was unpersuasive.[8]  But at the same

8    time, the ALJ rejected the consultants' opinion of Plaintiff's upper extremities because

9    Dr. Gordon identified greater deficiencies that were supported by Plaintiff's testimony and

10   other evidence submitted at the hearing level.  (AR at 29).  The ALJ cited to no other

11   evidence in the record to explain why the consultants' upper extremity opinions were

12   unpersuasive.

13   　　　Although the ALJ adequately articulated her reasons for rejecting Dr. Gordon's

14   sitting limitation under the consistency factor, she did not do so under the supportability

15   factor.  It is difficult to understand why the ALJ did not arrive at the same outcome with

16   respect to Plaintiff's sitting limitations when comparing the consultant assessments.  This

17   is especially so because, like his opinion of greater deficiencies in Plaintiff's upper

18   extremities, Dr. Gordon's sitting limitation was too supported by Plaintiff's testimony.

19   (*See e.g.*, AR at 98–99, 119–120).  Moreover, The ALJ's rejection of the consultant

20   assessments regarding Plaintiff's upper extremities comports with the principle that

21   subsequent medical records showing Plaintiff's condition may be progressively

22   deteriorating are more probative. The ALJ's rejection of Dr. Gordon's two-hour sitting

23   limitation, however, does not comport with that principle.

24   　　　In concluding the consultants' assessments were unpersuasive due to Dr. Gordon's

25   assessment, but then rejecting Dr. Gordon's assessment because of the consultants'

26   assessments, the Court finds the ALJ reasons were contradictory and therefore not

27   supported by substantial evidence.  The ALJ does not cite to any other evidence in the

28
_____

[8] As explained, Dr. Gordon's observations that Plaintiff could sit for the duration of the assessment was insufficient to discount his sitting limitation.  *See supra* Section I.A(4)(a).

1    record to justify her reasoning apart from the state consultant assessments.  Without any

2    additional explanation to reconcile these contradictions, the ALJ's decision does not appear

3    to be backed by "such relevant evidence as a reasonable mind might accept as adequate to

4    support a conclusion." *Garrison*, 759 F.3d at 1009; *see Bray*, 554 F.3d at 1225 (explaining

5    the district court cannot speculate what the ALJ's reasoning might have been based on

6    other evidence available).

7         In sum, the ALJ has not offered any sufficient reason to reject Dr. Gordon's opinion

8    regarding Plaintiff's sitting limits.   The ALJ's error was harmful:   when properly

9    considered, Dr. Gordon's sitting limitation may result in a more restrictive RFC,[9] which

10   may in turn alter the finding of non-disability.  *See Molina*, 674 F.3d at 1115 (explaining

11   an error is harmless if there remains substantial evidence supporting the ALJ's decision,

12   and the error does not affect the ultimate nondisability determination).   The Court will

13   therefore reverse the ALJ's decision to partially discount Dr. Gordon's opinion.

14        **B.     Symptom Testimony.**

15        Because the ALJ's error when rejecting Dr. Gordon's opinion alone warrants

16   remand, the Court declines to address Plaintiff's remaining arguments regarding her

17   symptom testimony.

18   **V.    Remand**

19        Once a court has determined an ALJ's decision contains harmful error, it maintains

20   discretion to remand the case for additional proceedings or for an award of benefits.

21   *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998) (citing *Swenson v. Sullivan*, 876 F.2d

22   683, 689 (9th Cir. 1989)).  Remand for further administrative proceedings is appropriate if

23   enhancement of the record would be useful.  *See Harman v. Apfel*, 211 F.3d 1172, 1178

24   (9th Cir. 2000).  This is "the proper course, except in rare circumstances[.]" *Treichler v.*

25   *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).   Conversely, under the

26   "credit-as-true" rule, the court has discretion to remand for an award of benefits where

27   _____

28   [9] The ALJ indeed adjusted Plaintiff's RFC to reflect Dr. Gordon's assessment of Plaintiff's
     greater limitations of her upper extremities.  (AR at 29).

1
2
3
4
5

"(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted).

6
7
8
9
10
11
12

Plaintiff argues her case meets the credit-as-true standard and this case should be remanded for calculation of benefits. (Doc. 12 at 24–25). However, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further analysis of the medical evidence is necessary before a proper determination of Plaintiff's disability can be made. Therefore, the Court, in its discretion, concludes that a remand for further proceedings is appropriate here.

Accordingly,

13
14
15

**IT IS ORDERED** that Administrative Law Judge's June 2, 2021, decision is reversed in part and remanded for additional proceedings consistent with the directives of this Order.

16
17

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

18
19
20
21

Dated this 22nd day of September, 2023.

Honorable Diane J. Humetewa
United States District Judge

22
23
24
25
26
27
28